1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONELL THOMAS HAYNIE,                    No.  2:13-cv-1876 TLN DAD P

12                Petitioner,

13        v.                                   ORDER AND

14   MARTIN BITER, Warden                      FINDINGS AND RECOMMENDATIONS

15                Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Therein, petitioner challenges a judgment of conviction entered

19   against him on August 30, 2010, in the Sacramento County Superior Court on one count of

20   kidnapping.[1]  He seeks federal habeas relief on the grounds that:  (1) his trial counsel rendered

21   ineffective assistance; and (2) the decision of the California Court of Appeal rejecting one of his

22   appellate claims was "arbitrary," in violation of his right to due process.  Upon careful

23   consideration of the record and the applicable law, the undersigned will recommend that

24   petitioner's application for habeas corpus relief be denied.

25   _____

26   [1]  Petitioner was also convicted of simple assault as a lesser included offense to assault with a
     deadly weapon and possession of methamphetamine, along with kidnapping, and with a finding
27   that he had suffered two prior "strike" convictions pursuant to California's Three Strikes Law.
     However, in his federal habeas petition before this court he challenges only his kidnapping
28   conviction.  (ECF No. 9 at 4, 5.)

                                          1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury found defendant Donell Thomas Haynie guilty of false imprisonment (Penal Code,FN1 § 236; count 4), simple assault as a lesser included offense to assault with a deadly weapon by means likely to produce great bodily injury (§ 240; count 5), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 6), and kidnapping (§ 207, subd. (a); count 7).  The jury found defendant not guilty of oral copulation by force (§ 288a, subd. (c)(2); count 1), two counts of rape by force (§ 261, subd. (a)(2); counts 2 and 3), and pandering (§ 266i, subd. (a)(1); count 8).  In a bifurcated proceeding, the trial court found true allegations defendant had two serious felony convictions within the meaning of section 667, subdivision (a), which also qualified as "strikes" under the three strikes law (§§ 667, subd. (b)-(i); 1170.12).  Defendant was sentenced to 85 years to life in prison, consisting of three terms of 25 years to life for counts 4, 6, and 7, plus 5 years for each of his serious felony convictions.FN2

> FN1.  Further undesignated statutory references are to the Penal Code.

> FN2.  As for the assault (count 5), the trial court indicated that it was "not going to in light of the sentence order any additional time even though probation is suggesting otherwise."

> Defendant appeals, contending his kidnapping conviction must be reversed because the trial court did not instruct the jury on the lesser included offense of false imprisonment, and his conviction for false imprisonment must be reversed because the People cannot establish beyond a reasonable doubt that the kidnapping and false imprisonment convictions are not based on the same act.  We shall conclude that defendant is barred under the doctrine of invited error from challenging the trial court's failure to instruct the jury on false imprisonment as a lesser included offense to kidnapping, and that it is impossible to determine whether the same act forms the basis for both his kidnapping and false imprisonment convictions. Accordingly, we shall reverse defendant's conviction for false imprisonment (count 4), affirm the judgment in all other respects, and remand the cause with directions.FN3

> FN3. Because we shall reverse his conviction on count 4, we need not consider defendant's claims of sentencing error as to that count.

/////

/////

/////

2

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.      The Prosecution

At approximately 10:30 p.m. on August 12, 2009, G.A. met her cousin and some friends at a bar in Sacramento. Sometime later, the group was joined by a friend of G.'s cousin and defendant. G. had never seen defendant before that night. After the bar closed, she left with her cousin's friend and defendant in defendant's car. After dropping off her cousin's friend, G. and defendant went to defendant's apartment for a swim. When they finished swimming, they returned to defendant's apartment, and defendant gave G. some dry clothes. G. asked defendant for a ride home. Defendant said he had lent his car to his cousin, and G. fell asleep on defendant's bed.

G. woke up around 6:00 a.m. and asked defendant if his cousin had returned. Defendant said "no," and G. fell back to sleep. She woke up about 9:00 a.m. when she "felt" defendant come into the bedroom. Defendant lay down on the bed and tried to touch her. She told him to get his hand off her, and defendant responded that "he was going to fuck [her] up." When G. reached for her cellular telephone, defendant attempted to take it by wrestling with and choking her. He then dragged her into the bathroom, told her take off all her clothes, and said that he was going to sell her to a pimp. Thereafter, defendant prevented her from leaving the bathroom.

Defendant eventually let G. out of the bathroom and told her to take some blue Ecstasy pills. When she refused, he told her she either had to take the pills or give him a "blow job." When she refused to take the pills, defendant dragged her back into the bathroom and forced her to perform oral sex on him while he held a screwdriver to her body. Thereafter, he fondled her breasts and forced her to have sexual intercourse with him.

When defendant left the bathroom, G. ran out the front door and down the stairs leading to the apartment. Defendant followed her and dragged her back to his apartment by her hair while repeatedly threatening to kill her. A neighbor who observed the altercation called 911.

Once inside the apartment, defendant told G. to take a shower and said he would kill her if the police came. When she finished showering, defendant duct taped her hands, feet, and mouth. Five or ten minutes later, the police knocked at the door. Defendant removed the duct tape, flushed it down the toilet, and threw the roll of tape into a laundry basket. Defendant apologized and told G. to tell the police that it was his cousin and his cousin's girlfriend who had been fighting outside the apartment. When the police entered the apartment, G. initially told them defendant's cousin and his cousin's girlfriend had been fighting outside the apartment. After defendant was taken out of the room, G. told the police what actually had happened and pointed out the duct tape in the toilet and the laundry basket.

G. was taken to the hospital. She had visible bruising and abrasions on her body and adhesive and sliver flecks consistent with duct tape on her body. She also had redness and an abrasion "in the area posterior to the vagina."

## II.      The Defense

Christopher Reed was living with defendant at the time of the incident and sat in the Jacuzzi while defendant and G. swam in the pool. Defendant and G. were talking, hugging, and kissing in the pool; and when they returned to the apartment, they appeared affectionate toward each other. Reed heard them talking and laughing in the bedroom before he fell asleep. At approximately 6:00 a.m., defendant asked Reed to take his mother to work. When Reed returned, defendant asked him to take his brothers to school. Reed returned about 20 minutes later but left again to pick up some money from his estranged wife. Reed did not see G. that morning.

At approximately 9:30 a.m. on August 13, 2009, defendant's neighbor visited defendant's apartment for about five minutes. G. was lying on the couch and did not appear to be in any distress.

Defendant testified that on the night in question, G. left the bar with him and a couple of other men. Defendant invited her to go swimming, and she accepted. G. jumped into the pool wearing her dress, but later removed it and was wearing only her panties. He and G. kissed in the pool, and he penetrated her vagina with his finger. When they returned to defendant's apartment, defendant showed G. the bathroom and gave her a toothbrush and a dry shirt to put on. While defendant was talking to Reed in the living room, G. left the bathroom and went into defendant's bedroom. Defendant joined her there, and they had sexual intercourse. When they were finished, defendant left the bedroom and fell asleep on the couch. Around 6:00 a.m., he asked Reed to drive his mother to work. Reed agreed and returned about 20 minutes later. Defendant then asked Reed to drive his brothers to school, and Reed agreed. When Reed returned, Reed asked defendant if he could borrow his car. Defendant agreed and walked with Reed outside to the car. Defendant was gone about 15 minutes. When he returned, G. was laying on the couch. The two talked, and defendant began wondering where he had left his money. When he was unable to find it, he began questioning G. about the money. She did not appreciate being questioned and refused to show him her wallet. When defendant left the room, G. ran out the front door and down the stairs. Defendant chased after her, and the two scuffled as she screamed for help. Defendant may have pulled her hair a couple of times and choked her, but he denied dragging her by her hair or stomping on her. Eventually, he picked her up and carried her to the base of the stairs leading to his apartment. When two acquaintances walked by, defendant told them, "[T]his bitch stole my money," and they helped him look for G.'s wallet. Defendant followed G. to the apartment and suggested she take a shower because her feet were bleeding. While defendant was not going to let her go until he got his money, he denied duct taping her.

4

> When defendant told G. the police were there, she told him not to answer the door and maybe they would go away.   At that point, defendant told her to tell the police that it was his cousin and his cousin's wife who were fighting.

People v. Haynie, No. C066352, 2013 WL 518616, at *1 -3 (Cal. App. 3 Dist. Feb. 13, 2013)

On March 3, 2013, petitioner filed a petition for rehearing in the California Supreme Court. (Resp't's Lod. Doc. 10.) On March 7, 2013, that petition was summarily denied. (Id.) On September 6, 2013, petitioner filed a motion to recall the remittitur. (Resp't's Lod. Doc. 10a.) The California Supreme Court summarily denied that motion on September 12, 2013. (Id.) On March 25, 2013, petitioner filed a petition for review in the California Supreme Court. (Resp't's Lod. Doc. 11.) The Supreme Court denied that petition on May 1, 2013. (Id.)

Petitioner subsequently filed a petition for writ of habeas corpus in the Sacramento County Superior Court, claiming that his trial counsel had rendered ineffective assistance in asking the trial court not to instruct the jury on false imprisonment as a lesser included offense to kidnapping, and that his appellate counsel had rendered ineffective assistance in failing to raise a claim of ineffective assistance of trial counsel on appeal. (Resp't's Lod. Doc. 12.) On October 21, 2013, the Sacramento County Superior Court denied that petition in a reasoned decision addressing the merits of petitioner's claims. (Id.) On November 18, 2013, petitioner filed a pro se petition for writ of habeas corpus in the California Court of Appeal. (Id.) Liberally construed, that petition raised the same two claims that petitioner raised in his habeas petition filed in the Sacramento County Superior Court. (Id.) On November 21, 2013, that petition was summarily denied by the California Court of Appeal. (Id.)

On January 8, 2014, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, raising the same two claims. (Resp't's Lod. Doc. 13.) On March 25, 2014, the Supreme Court directed respondent to file an informal response to this petition and granted petitioner time to file a reply. (Id.) Respondent filed an informal response on April 15, 2014. (Resp't's Lod. Doc. 14.) Petitioner filed a reply on May 9, 2014. (Resp't's Lod. Doc. 15.) On June 25, 2014, the California Supreme Court summarily denied petitioner's application for a writ of habeas corpus. (Resp't's Lod. Doc. 13.)

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, ___ U.S. ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly

1   established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

2         A state court decision is "contrary to" clearly established federal law if it applies a rule

3   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

4   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

5   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

6   writ if the state court identifies the correct governing legal principle from the Supreme Court's

7   decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]  Lockyer v.

8   Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

9   (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

10  concludes in its independent judgment that the relevant state-court decision applied clearly

11  established federal law erroneously or incorrectly.  Rather, that application must also be

12  unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

13  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

14  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

15  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

16  'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

17  Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

18  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

19  must show that the state court's ruling on the claim being presented in federal court was so

20  lacking in justification that there was an error well understood and comprehended in existing law

21  beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

22        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

23  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

24  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

25  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

26  _____

27  [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28  384 F.3d 628, 638 (9th Cir. 2004)).

1    2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

2    de novo the constitutional issues raised.").

3         The court looks to the last reasoned state court decision as the basis for the state court

4    judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

5    If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

6    previous state court decision, this court may consider both decisions to ascertain the reasoning of

7    the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

8    federal claim has been presented to a state court and the state court has denied relief, it may be

9    presumed that the state court adjudicated the claim on the merits in the absence of any indication

10   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

11   may be overcome by a showing "there is reason to think some other explanation for the state

12   court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

13   (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

14   does not expressly address a federal claim, a federal habeas court must presume, subject to

15   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

16   ___, 133 S. Ct. 1088, 1091 (2013).

17        Where the state court reaches a decision on the merits but provides no reasoning to

18   support its conclusion, a federal habeas court independently reviews the record to determine

19   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

20   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

21   review of the constitutional issue, but rather, the only method by which we can determine whether

22   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

23   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

24   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

25        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

26   Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

27   just what the state court did when it issued a summary denial, the federal court must review the

28   state court record to determine whether there was any "reasonable basis for the state court to deny

relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." 562 U.S. at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III.  Petitioner's Claims

### A.  Exhaustion of State Remedies

In his first ground for federal habeas relief, petitioner claims that his trial counsel rendered ineffective assistance in failing to request that the trial court instruct the jury at his trial on false imprisonment as a lesser included offense to the kidnapping charge. (ECF No. 9 at 6.) In his second ground for relief, petitioner claims that the state appellate court's rejection of his argument on appeal that the trial court erred in failing to instruct the jury on false imprisonment as a lesser included offense to the kidnapping charge was "arbitrary" and therefore violated his "liberty interest" protected by the Due Process Clause. (Id.) Respondent argues that neither of these two claims has been exhausted in state court and that they should be rejected on that basis. (ECF No. 20 at 10-12.)

The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in habeas corpus proceedings. See Rose v. Lundy, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1986). However, a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is

1   not "colorable." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). See also 28 U.S.C. §

2   2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

3   notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

4   State"). For the reasons explained below, the undersigned need not address the issue of

5   exhaustion because it is perfectly clear that petitioner has not raised even colorable claims for

6   federal habeas relief.

7       **B. Ineffective Assistance of Trial Counsel**

8           As set forth above, petitioner's first claim for federal habeas relief is that his trial counsel

9   rendered ineffective assistance in failing to request that the trial court instruct the jury on false

10  imprisonment as a lesser included offense to the kidnapping charge. (ECF No. 9 at 6.) That

11  claim is clearly not colorable and the undersigned recommends that it be rejected.

12          **1. Background**

13          On appeal in state court petitioner claimed that the trial court erred in failing to instruct his

14  jury on false imprisonment as a lesser included offense to the kidnapping charged in count 7 of

15  the information. The California Court of Appeal concluded that petitioner had waived this claim

16  pursuant to the doctrine of "invited error" by failing to request the jury instruction. The state

17  appellate court reasoned as follows:

18          **Defendant Is Barred Under the Doctrine of Invited Error From
            Challenging the Trial Court's Failure to Instruct the Jury on**
19          **False Imprisonment as a Lesser Included Offense to
            Kidnapping**
20

21          Defendant contends that the trial court committed reversible error
            by honoring his request not to instruct the jury on false
            imprisonment as a lesser included offense of kidnapping. As we
22          shall explain, he is barred from raising this claim on appeal.

23          After the parties and the trial court finished discussing the requested
            jury instructions, the trial court sought to confirm that the parties
24          were not requesting the jury be instructed on any lesser included
            offenses except as to count 5, assault with a deadly weapon by
25          means likely to produce great bodily injury. The parties responded
            in the affirmative.
26

27          The following court day, the trial court again raised the issue of
            lesser included offenses. In particular, the court indicated that it
            thought the jury should be instructed on false imprisonment as a
28          lesser included offense to kidnapping (count 7).

"THE COURT: . . . [¶] . . . [W]e have had some dialogue by e-mail back and forth about the instructions and my thinking about a lesser false imprisonment [instruction] as to Count 7, the kidnap charge. [¶]  The reason I think that is because we already had a discussion about the different acts that potentially had constituted a 236 [false imprisonment] as charged.

"[PROSECUTOR]: Correct.

"THE COURT: And then the reason why I think that we need to give a lesser to 236 [false imprisonment] on the kidnap is the jury could find that [defendant] did not commit a kidnap for the conduct that occurred outside, and thus find him guilty of false imprisonment in the lesser-included offense.

"[PROSECUTOR]: Basically if they found it was not a substantial distance but the other element [sic] were satisfied.

"THE COURT: Yes.  That he detained her against her will, so that they could find him guilty of that.  And I think the People are - I still, unless the defense is going to demand that I not give a lesser - [¶]  I don't know if - I didn't ask [defense counsel] about this yet because we just got together this morning.  [¶]  Do you have any position about the giving of a lesser on Count 4.  I'm sorry.  On count 7, the kidnap?

"[DEFENSE COUNSEL]: Submitted your Honor, No.

"THE COURT: You do or don' want to give one?  If you don't want to give one then I won't give a lesser.  But I'll have to give - I think it is wise to make the election.

"[¶] ... [¶]

"[DEFENSE COUNSEL]: We are not requesting it, your Honor.

"THE COURT: Are you specifically asking me not to give the lesser then of false imprisonment?

"[DEFENSE COUNSEL]: Are you indicating that he is still charged with the false imprisonment?

"THE COURT: He is charged with false imprisonment in Count 4. He is charged with the kidnap in Count 7, and so they could find him not guilty of a kidnap but find him guilty of a lesser false imprisonment to the kidnap.

"[DEFENSE COUNSEL]: Can I explain to him what's happening?

"THE COURT: Yes.

"[DEFENSE COUNSEL]: We are asking that it not be read.

"[¶] ... [¶]

11

"[DEFENSE COUNSEL]: Unless my client is requesting if there is a lesser on Count 4 [false imprisonment], then you add the lesser on Count 7 [kidnap].

"THE COURT: I don't know what the lesser would be on a Count 4 [false imprisonment]. What lesser are you asking for? 236?

"[PROSECUTOR]: I don't believe there is one.

"[DEFENSE COUNSEL]: I don't believe there is one either. I just - [¶] . . . And my concern is the confusion if - this is a life case anyway, and if he is already charged with [false imprisonment] in Count 4, I don't think it would be necessary or useful to the defense to have the lesser in Count 7."

Defendant contends the trial court committed reversible error by failing to instruct the jury on false imprisonment as a lesser included offense to kidnapping because the jury was left with an "'unwarranted all-or-nothing choice' between a conviction for kidnapping and acquittal." The People respond that under the invited error doctrine, defendant may not raise this issue on appeal because "[f]rom [defense counsel's] remarks, it is apparent that [she] was pursuing a deliberate all-or-nothing strategy in the hopes of securing an acquittal on the kidnapping charge."

False imprisonment is a lesser included offense of the crime of kidnapping. (People v. Magana (1991) 230 Cal.App.3d 1117, 1120–1121.) In criminal cases, the trial court must instruct on lesser included offenses "if there is substantial evidence the defendant is guilty of the lesser offense, but not the charged offense." (People v. Moye (2009) 47 Cal.4th 537, 556.) "'"[A] defendant[, however,] may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence. [Citations.] In that situation, the doctrine of invited error bars the defendant from challenging on appeal the trial court's failure to give the instruction.'" [Citations.]" (People v. Beames (2007) 40 Cal.4th 907, 927.)

Here, the record clearly reflects that defendant and his counsel expressed a deliberate tactical purpose in resisting an instruction on false imprisonment as a lesser included offense of kidnapping, the very instruction he now complains should have been given. As the trial court mentioned, there were two potential false imprisonments in this case - one outside the apartment and one inside. Rather than run the risk of the jury finding defendant guilty of two counts of false imprisonment, defendant and his counsel elected to forego an instruction on the lesser included offense of false imprisonment as to the kidnapping offense, hoping the jury would find him not guilty of kidnapping and guilty of, at most, one count of false imprisonment. Unfortunately for them, things did not go as they had hoped, and the jury found defendant guilty of kidnapping and false imprisonment. Having made the tactical decision to take an all-or-nothing approach on count 7, the kidnapping offense, we find

12

that any error was invited, and that defendant therefore is barred from invoking such error as a basis for reversing his conviction.

Haynie, 2013 WL 518616, at **3 -4.

After the California Court of Appeal rejected petitioner's argument of trial court instructional error, petitioner filed a petition for a writ of habeas corpus in the Sacramento County Superior Court. Therein, he claimed that his trial counsel rendered ineffective assistance in refusing a jury instruction on the lesser included offense to the kidnapping charge, and claimed that his appellate counsel rendered ineffective assistance in failing to raise the argument of the ineffective assistance of trial counsel on appeal. (Resp't's Lod. Doc. 12.) The Superior Court denied relief on both claims, reasoning as follows:

> Petitioner claims that his trial counsel rendered him ineffective assistance of counsel in failing to request the court to give a lesser included instruction on kidnapping, and that appellate counsel was ineffective in failing to raise the issue on appeal.
>
> Petitioner admits that the trial court had indicated that it thought the jury should be instructed on false imprisonment as a lesser included offense to kidnapping because the evidence was susceptible of a finding that the distance of asportation was not substantial enough to constitute kidnapping, and the prosecution agreed, but that it was petitioner's own defense counsel who did not want the instruction and told the court that counsel was not asking for the instruction. Petitioner claims that trial counsel erroneously advised petitioner to decline the lesser included offense instruction, which made it an all-or-nothing choice on the count for the jury. He claims there was a substantial evidentiary basis for acquittal on kidnapping and guilt on the lesser included false imprisonment, due to the asportation issue, and that but for counsel's error it is reasonably probable that a different result would have ensued. He further claims that had he only been convicted of false imprisonment on the charge, he would now be eligible for Penal Code § 1170.126 recall of sentence and resentencing.
>
> On appeal, appellate counsel did raise the issue of whether the trial court erred in honoring the defense's request to not instruct the jury on false imprisonment as a lesser-included offense to kidnapping, because that left the jury with an all-or-nothing choice between conviction for kidnapping and acquittal. The Third District Court of Appeal found that petitioner was estopped from raising this claim on appeal[.]
>
> * * *
>
> Petitioner's appellate counsel did not specifically raise an ineffective assistance of trial counsel claim on the appeal, but it

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

would appear that had the issue been raised it would have been rejected, as the Third District clearly found that trial counsel's choice had been a tactical one that counsel hoped would lead to an acquittal on the kidnapping charge. The Third District also quoted prior case that indicates that trial counsel may make a tactical choice not to want a lesser included instruction given, and that when counsel does so the defendant is barred from raising the claim on appeal. It would appear that this means such a tactical choice by counsel may be an informed tactical choice within the range of reasonable competence, which does not deprive a criminal defendant of effective assistance of counsel (see Strickland v. Washington, (1984) 466 U.S. 668; People v. Pope, (1979) 23 Cal.3d 412). Nor would it appear in the instant case that the tactical choice of counsel was unreasonable. Petitioner was charged in Count 7 with kidnapping and in Count 4 with false imprisonment. There was one instance in which the evidence showed kidnapping, that had the asportation issue; there were different acts shown, however, by the evidence, that constituted only false imprisonment. The People had chosen not to elect which act it sought the conviction for, for Count 4. As such, the jury could have rejected false imprisonment on the different acts and then been faced with the issue of whether the kidnapping lacked asportation and thus should result in an acquittal of the kidnapping but a conviction on the false imprisonment. As such, Count 4 acted as a lesser included offense instruction for Count 7, and counsel saw no need to separately instruct on a lesser included offense for Count 7. That was not unreasonable, and in any event prejudice is not shown in this situation.

16

(Resp't's Lod. Doc. 13.)

17

**2. Petitioner's Arguments**

18

Petitioner argues that his trial counsel's waiver of the lesser included offense jury

19

instruction was not based on a tactical decision because counsel failed to conduct sufficient

20

investigation before making the decision to waive the instruction. (ECF No. 9 at 9.) Citing the

21

decision in Correll v. Ryan, 539 F.3d 938, 949 (9th Cir. 2008), petitioner argues that "until a

22

reasonable investigation is conducted, counsel is not in a position to make critical strategic

23

decisions or settle on a trial strategy."[3]  (Id.)  Petitioner contends that trial counsel's decision to

24

waive the instruction was made "on the spot."  (Id. at 10.)  He also argues that because his trial

25

counsel failed to conduct sufficient investigation, she "completely lack [sic] understanding to

26

27

28

[3]  In Correll the court held that trial counsel's decision not to put on a mitigation case could not be considered the product of a strategic choice where counsel had failed to make a reasonable investigation into potential mitigating evidence.  539 F.3d at 949.

14

1  what the court was trying to tell her." (Id.)

2         Petitioner asserts that his trial counsel's "mistake" in declining the trial court's invitation

3  to instruct his jury on the lesser included offense, which was made without conducting sufficient

4  investigation, was not a tactical decision to proceed on an "all-or-nothing strategy" but was

5  instead simply an uninformed error on the part of his counsel.  (Id.)  He states that counsel never

6  advised him "that it would be her plan to pursue an all-or-nothing strategy on the kidnapping

7  offense." (Id. at 13.)  In support of his arguments in this regard, petitioner cites the decision in

8  Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006), in which the court noted that

9  "although trial counsel is typically afforded leeway in making tactical decisions regarding trial

10  strategy, counsel cannot be said to have made a tactical decision without first procuring the

11  information necessary to make such a decision." (Id. at 11.)

12         Petitioner also claims that he suffered prejudice as a result of his trial counsel's error in

13  failing to request the lesser included offense jury instruction.  (Id.)  He argues that the lesser

14  included offense instruction with regard to the kidnapping count against him was "very essential"

15  to his defense because it was possible the jury in his case could have found he committed false

16  imprisonment, and not kidnap, with respect to the events that occurred outside his apartment.

17  (Id.)  Petitioner notes the jury acquitted him of "all crimes that depended solely on the victims

18  testimony, which means that petitioner was acquitted of all crimes that allegedly took place inside

19  the apartment before the victim fled." (Id. at 12.)   From this petitioner speculates that had they

20  received the lesser included offense instruction, his jury probably would have found that the

21  "asportation" required for a kidnapping conviction was not shown because there was no risk of

22  harm to the victim in moving her from outside the apartment to inside the apartment.  (Id.)

23  Petitioner concludes that "there was a substantial evidentiary basis for an acquittal on the

24  kidnapping charge in favor of a lesser included offense of false imprisonment." (Id.)

25         In support of his claim of ineffective assistance of trial counsel, petitioner has filed his

26  own declaration under penalty of perjury, in which he declares, in pertinent part, as follows:  (1)

27  prior to the jury instruction conference held in open court and described by the California Court

28  of Appeal, his trial counsel had never spoken to him about lesser included offense jury

15

1    instructions with respect to count 7 of the information; (2) when his trial counsel finally did

2    discuss the issue with petitioner during a recess, she told him that "she was not going to ask for

3    the instruction to be read," and then stated 'I believe the court has to give it to us anyway;" (3)

4    trial counsel did not ask petitioner whether or not he wanted a lesser included offense jury

5    instruction given with respect to the charge against him in count 7; (4) trial counsel also did not

6    ask him whether he wanted a lesser included offense jury instruction given on count 7 if the court

7    gave a lesser included offense jury instruction with respect to the charge in count 4; (5) if

8    petitioner had been asked, he would have requested "the lesser included offense instruction on

9    any count the court was willing to give;" and (6) trial counsel did not advise him of the possible

10   consequences of waiving the lesser included offense jury instruction on count 7.  (Id. at 15.)

11   Without further explanation, petitioner also declares that "this proposition was never the strategy

12   for my defense."  (Id.)  Finally, petitioner states that he contacted his appellate counsel to "notify

13   him of (trial counsel's) ineffectiveness during jury instructions for the lesser included on count

14   7," but received no response.  (Id. at 16.)

15          **3. Applicable Law**

16          The clearly established federal law governing ineffective assistance of counsel claims is

17   that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

18   succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

19   deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is

20   constitutionally deficient if his or her representation "fell below an objective standard of

21   reasonableness" such that it was outside "the range of competence demanded of attorneys in

22   criminal cases."  Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

23   serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Richter, 562

24   U.S. at 114 (quoting Strickland, 466 U.S. at 687).  Reasonable tactical decisions, including

25   decisions with regard to the presentation of the case, are "virtually unchallengeable."  Strickland,

26   466 U.S. at 687-90.

27          A reviewing court is required to make every effort "to eliminate the distorting effects of

28   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

16

1   conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669. See also Richter,

2   131 S. Ct. at 789 (same). Reviewing courts must "indulge a strong presumption that counsel's

3   conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S.

4   at 689. There is in addition a strong presumption that counsel "exercised acceptable professional

5   judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990)

6   (citing Strickland, 466 U.S. at 689). This presumption of reasonableness means that the court

7   must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the

8   range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v.

9   Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and alterations

10  omitted).

> [AEDPA] limits our authority to grant a federal writ by establishing two "highly deferential" standards. Premo v. Moore, —— U.S. ——–, 131 S. Ct. 733, 740, 178 L.Ed.2d 649 (2011). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, —— U.S. ——, 131 S. Ct. 770, 785, 178 L.Ed.2d 624 (2011). Thus, a state court's determination that a claim lacks merit bars federal habeas relief so long as 'fairminded jurists could disagree' on the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004). Moreover, to grant a habeas petition under § 2254(d)(2), a state court's factual findings must be 'clearly erroneous,' not just merely debatable. Torres v. Prunty, 223 F.3d 1103, 1107–08 (9th Cir. 2000). These stringent standards 'guard against extreme malfunctions in the state criminal justice systems, not as a substitute for ordinary error correction through appeal.' Richter, —— U.S. ——, 131 S. Ct. at 786 (internal quotation marks omitted).

21  Griffin v. Harrington, 727 F.3d 940, 945 (9th Cir. 2013).

22       "The standards created by Strickland and § 2254(d) are both "highly deferential," and

23  when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations

24  omitted). Thus, in federal habeas proceedings involving "claims of ineffective assistance of

25  counsel, . . . AEDPA review must be """"doubly deferential"""" in order to afford "both the state

26  court and the defense attorney the benefit of the doubt." Woods v. Daniel, ___U.S.___, ___,

27  2015 WL 1400852, at *3 (U.S. Mar. 30, 2105) (quoting Burt v. Titlow, 571 U.S. ___, ___, 134 S.

28  Ct. 10, 13 (2013)). As the Ninth Circuit has recently acknowledged:

> "The question," therefore, "is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011). Even where this court believes the state court decision was "wrong," that result must be upheld if "fairminded jurists could disagree on [its] correctness." Id. at 786.

Camp v. Nevins, ___F.3d___, ___, 2015 WL 1347350, at * 4 (9th Cir. Mar. 26, 2015).

With these standards in mind, the undersigned turns to address petitioner's claims.

### 4. Analysis

Petitioner took the witness stand at his trial and testified that G. went to his apartment voluntarily and had consensual sex with him. This testimony was supported by another witness who observed petitioner and G. "talking, hugging, and kissing" in the swimming pool prior to going into petitioner's apartment. This same witness testified that petitioner and G. appeared affectionate toward each other when they returned to the apartment, and that they were subsequently talking and laughing in the bedroom. Petitioner further testified at trial that G. later stole his wallet and left the apartment after they had an argument about it. Although he agreed there was a physical altercation outside the apartment related to his attempts to get his wallet back from G., he denied hitting, dragging, or kicking G, or forcing her back into his apartment. (Reporter's Transcript on Appeal at 452-58, 483-84.) Petitioner explained that he believed his behavior was justified because he thought G. had stolen his wallet and he didn't want her to leave with it. (Id. at 452-58, 479-80)

In light of petitioner's extensive testimony at trial supporting his defense that no kidnapping occurred and the testimony of another witness that petitioner and G. appeared to be on very good terms before the fight outside the apartment, it is reasonable to conclude that petitioner's trial counsel made a tactical decision to give the jury an all-or-nothing choice on the kidnapping charge based on the expectation that petitioner would be acquitted of it. While some lawyers may have chosen to request the lesser included offense jury instruction, the decision by petitioner's trial counsel to employ a different tactic was not unreasonable under the facts of this case. Petitioner himself concedes that "there was a substantial evidentiary basis for an acquittal on the kidnapping charge." (ECF No. 9 as 12.) Nor was it unreasonable for petitioner's trial

18

1  counsel to be concerned that giving the jury two instructions on false imprisonment might result

2  in two convictions for false imprisonment instead of an acquittal on the kidnapping charge and a

3  conviction on only one count of false imprisonment.

4         The Ninth Circuit has opined that when trial counsel makes a "difficult but thoughtful

5  tactical decision," a reviewing court must presume that counsel's conduct was "within the range

6  of competency." Harris v. Pulley, 885 F.2d 1354, 1368 (9th Cir. 1988). Of course, a defense

7  counsel "need not request instructions inconsistent with its trial theory." Butcher v. Marquez, 758

8  F.2d 373, 377 (9th Cir. 1985) (concluding that counsel was not ineffective for choosing to forego

9  a voluntary manslaughter jury instruction when the defense theory was that defendant did not

10  commit the charged act, not that he committed it under provocation). As the Ninth Circuit stated

11  under somewhat similar circumstances as presented here:

12              It is true that counsel did not offer a negligent homicide instruction
             and that he objected to the mitigated deliberate homicide
13              instruction. The record discloses that counsel did so not out of
             ignorance of the law but as the result of a tactical decision that the
14              jury should be forced to the choice of finding Bashor guilty of
             deliberate homicide or acquitting him outright. With the benefit of
15              hindsight we know that this strategy was incorrect; however, it did
             not constitute ineffective assistance of counsel. United States v.
16              Stern, 519 F.2d 521, 524–25 (9th Cir.), cert. denied, 423 U.S. 1033,
             96 S. Ct. 565, 46 L.Ed.2d 407 (1975), (reasoned tactical decisions
17              are not faulted, even if in retrospect better tactics were available).

18  Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984). See also Doucet v. Swarthout, No. 2:12-

19  cv-0031 GEB KJN P, 2014 WL 1884218, at *9-10 (E.D. Cal. May 12, 2014) (no ineffective

20  assistance where counsel  specifically requested that the jury not be instructed on attempted

21  voluntary manslaughter, and that despite facts in evidence to support the instruction on the lesser

22  included offense, counsel stated in open court that he made this decision in consultation with

23  petitioner in light of the chosen alternate theory of defense); Carrillo v. Hernandez, No. CV 08-

24  5616-ODW(CW), 2014 WL 103109, at *18 (C.D. Cal. Jan. 8, 2014) (no ineffective assistance in

25  not requesting a lesser included instruction that was arguably inconsistent with the defense theory

26  presented at trial). But cf. Griffin, 727 F.3d at 940 (trial counsel found to have rendered

27  ineffective assistance in failing to object to unsworn testimony of government witness, thereby

28  waiving issue on appeal, where the witness' testimony was the only direct testimony that

1   defendant was the shooter in an otherwise weak circumstantial case).  Under these standards, the

2   decision by petitioner's trial counsel not to request the lesser included offense jury instruction

3   was "not outside the range of competence demanded of attorneys in criminal cases."  Strickland,

4   466 U.S. at 687-88.

5          As noted above, petitioner suggests that his trial counsel merely decided on the spur of the

6   moment, and only after the trial judge brought up the subject, to decline the lesser included

7   offense jury instruction.  He argues this implies that his counsel had not conducted adequate

8   "investigation" into this issue before making that decision.  Petitioner offers no support for this

9   conclusory allegation, and it is therefore insufficient to support this claim of ineffective assistance

10  of counsel.  Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th

11  Cir. 1994)) ("'[c]onclusory allegations which are not supported by a statement of specific facts do

12  not warrant habeas relief'").

13         Petitioner declares that he would have requested the lesser included offense instruction if

14  he had been consulted.  This argument does not support petitioner's claim for relief.  His trial

15  counsel did not render ineffective assistance in failing to obtain petitioner's permission to decline

16  the lesser included offense instruction or to determine the overall defense strategy.  "The

17  appointed counsel manages the lawsuit and has the final say in all but a few matters of trial

18  strategy."  Faretta v. California, 422 U.S. 806, 812 (1975).  Further, "a lawyer may properly

19  make a tactical determination of how to run a trial in the face of his client's incomprehension or

20  even explicit disapproval."  Brookhart v. Janis, 384 U.S. 1, 8 (1966).  See also Raley v. Ylst, 470

21  F.3d 792, 799 (9th Cir.2006) ("A disagreement with counsel's tactical decisions does not provide

22  the basis for declaring that the representation was constitutionally deficient."), cert. denied, 552

23  U.S. 833 (2007); United States v. Corona-Garcia, 210 F.3d 973, 977, n. 2 (9th Cir. 2000) ("Even

24  if we were to conclude that the conflict with respect to trial tactics was severe, however, we

25  would still be disinclined to reverse on that ground because trial tactics are clearly within the

26  realm of powers committed to the discretion of defense counsel in any event."); United States v.

27  Wadsworth, 830 F. 2d 1500, 1509 (9th Cir. 1987) ("It is equally clear that appointed counsel, and

28  not his client, is in charge of the choice of trial tactics and the theory of defense"); Rhay v.

20

1   Browder, 342 F.2d 345, 349 (9th Cir. 1965) ("[C]ounsel is the manager of the lawsuit; this is of

2   the essence of the adversary system of which we are so proud.  In the nature of things he must be,

3   because he knows how to do the job and the defendant does not. That is why counsel must be

4   there.")  Here, trial counsel's apparent belief that the evidence supporting an acquittal on the

5   kidnapping charge against petitioner might lead to a not guilty verdict on that count was

6   reasonable, regardless of whether she discussed this issue with petitioner.

7        In rejecting petitioner's argument on appeal that the trial court had erred in failing to give

8   the lesser included instruction, the California Court of Appeal determined that trial counsel's

9   decision not to request a lesser-included offense instruction was based on a tactical decision to

10   proceed with an all-or-nothing defense to the kidnapping charge.  In rejecting petitioner's

11   subsequent ineffective assistance of counsel claim, the Sacramento County Superior Court agreed

12   with that conclusion, and further concluded that trial counsel's tactical choice was a reasonable

13   one under the circumstances of petitioner's case.  The Superior Court's decision in this regard is

14   clearly not "so lacking in justification that there was an error well understood and comprehended

15   in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

16   Accordingly, petitioner is not entitled to federal habeas relief on his claim that he received

17   ineffective assistance from his trial counsel.

18        **C. Ineffective Assistance of Appellate Counsel**

19        Although not entirely clear, it appears that petitioner may be attempting to raise a claim

20   that his appellate counsel rendered ineffective assistance in failing to argue on appeal that trial

21   counsel rendered ineffective assistance in failing to request a jury instruction on false

22   imprisonment as a lesser included offense to the kidnapping charge.  (See ECF No. 9 at 7, 8, 13-

23   14.)  In any event, such a contention does not present a colorable claim for relief.

24        The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v.

25   Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

26   However, an indigent defendant "does not have a constitutional right to compel appointed counsel

27   to press nonfrivolous points requested by the client, if counsel, as a matter of professional

28   judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).

1   Rather, counsel "must be allowed to decide what issues are to be pressed." Id.  Otherwise, the

2   ability of counsel to present the client's case in accord with counsel's professional evaluation

3   would be "seriously undermined." Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

4   Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

5   is not even particularly good appellate advocacy.")  There is also, of course, no obligation to raise

6   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing

7   of deficient performance as well as prejudice).  Thus, appellate counsel is certainly not deficient

8   for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to establish prejudice in

9   this context, petitioner must demonstrate that, but for appellate counsel's errors, he probably

10  would have prevailed on appeal.  Id. at 1434 n.9; see also Wildman v. Johnson, 261 F.3d 832,

11  840–42 (9th Cir. 2001).  Finally, the failure of an attorney to raise a meritless claim is not

12  prejudicial.  See Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012); Jones v. Smith, 231 F.3d

13  1227, 1239 n. 8 (9th Cir. 2000).

14    Above, the undersigned has concluded that petitioner's claim of ineffective assistance of

15  trial counsel lacks merit.  Appellate counsel's decision not to include this argument in petitioner's

16  direct appeal, but to instead focus on arguments which counsel believed were more meritorious,

17  was certainly "within the range of competence demanded of attorneys in criminal cases."

18  McMann v. Richardson, 397 U.S. 759, 771 (1970).  See also Jones, 463 U.S. at 751–54 (an

19  experienced attorney knows the importance of "winnowing out weaker arguments on appeal and

20  focusing on one central issue if possible, or at most on a few key issues").  The undersigned also

21  notes that in California, "claims of ineffective assistance are often more appropriately litigated in

22  a habeas corpus proceeding" and not on appeal.  People v. Mendoza Tello, 15 Cal. 4th 264, 267

23  (1997).  Indeed, petitioner did raise his claim of ineffective assistance of trial counsel in habeas

24  proceedings he pursued in state court.  His appellate counsel's decision to follow well-established

25  authority as to the type of issues most appropriately raised on direct appeal was clearly "within

26  the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

27    For the foregoing reasons, petitioner is not entitled to relief on his claim, if any, that his

28  appellate counsel provided him ineffective assistance.

### D.  Violation of Due Process

In his final ground for relief, petitioner claims that "the state court arbitrarily deprived petitioner due process of law guaranteed by the 14th Amendment to the United States constitution."  (ECF No. 9 at 6.)  He argues that the decision of the California Court of Appeal rejecting his argument that the trial court erred in failing to give the lesser included offense jury instruction violated its own prior decision in People v. Golde, 163 Cal.App.4th 101 (2008).  He contends that this erroneous ruling by the Court of Appeal also violated his Fourteenth Amendment "liberty interest" in being "protected from having the state arbitrarily deny him relief."  (Id.)  Petitioner argues that, under state law, the trial court had a sua sponte duty to instruct the jury on all lesser included offenses supported by the evidence introduced at trial and that the trial court's failure to do so in this case violated state law.  (Id. at 18-19.)  Furthermore, petitioner argues that his state created right to a lesser included offense jury instruction was arbitrarily abrogated by the California Court of Appeal's erroneous holding that his claim of trial court error was waived by the doctrine of invited error. [4]

In essence, although petitioner places a "due process violation" label on this claim, he is actually arguing that the decision of the California Court of Appeal was an erroneous application of California law.  As noted above, the federal habeas relief is not available for alleged error in the application of state law, and habeas corpus cannot be utilized in federal court to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972); see also Wilson, 562 U.S. at 16; Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is

---

[4]  In People v. Breverman, 19 Cal.4th 142, 154-55 (1998), the California Supreme Court held that a trial court's obligation to instruct the jury sua sponte on lesser included offenses supported by the evidence exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given.  In Golde, the California Court of Appeal for the Third Appellate District, relying on the Breverman decision, found that the trial court in that case had a duty to instruct on all lesser included offenses supported by the evidence and erred in leaving it up to the defendant to make that decision.  The court in Golde concluded, however, that the lesser included offense in that case was not supported by the evidence and, therefore, a jury instruction on that offense need not have been given.  Golde, 163 Cal.App.4th at 115-16.  The court also held that, in this context, the law concerning invited error is "inapposite."  Id. at 116.  In People v. Beames, 40 Cal.4th 907, 926 (2007), however, the California Supreme Court rejected the defendant's argument that the trial court's failure to instruct the jury on a lesser included offense violated his federal constitutional rights because any error by the trial court in this regard was "both invited and harmless."  See also Bortis v. Swarthout, No. 2:11-cv-3186-KJM-EFB P, 2013 WL 4012833, at * 11 (E.D. Cal. Aug. 6, 2013).

1    not the province of a federal habeas court to reexamine state-court determinations on state-law

2    questions.'"); Wood v. Ryan, 693 F.3d 1104, 1115 (9th Cir. 2012).  Accordingly, questions of

3    whether the trial court violated state law in failing to give the lesser-included offense jury

4    instruction and/or whether the appellate court's decision addressing that issue was erroneous

5    under state law are not properly presented to this federal habeas court.

6         A habeas petitioner may not "transform a state-law issue into a federal one" merely by

7    asserting a violation of the federal constitution.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir.

8    1997).  Rather, petitioner must show that the decision of the state courts somehow "violated the

9    Constitution, laws, or treaties of the United States."  Little v. Crawford, 449 F.3d 1075, 1083 (9th

10   Cir. 2006) (quoting Estelle, 502 U.S. at 68).  Petitioner has failed to make this showing.

11        The Fourteenth Amendment due process clause applies when government action deprives

12   a person of life, liberty or property.  U.S. Const., Amend. IV.  "The Supreme Court has

13   'repeatedly held that state statutes may create liberty interests that are entitled to the procedural

14   protections of the Due Process Clause of the Fourteenth Amendment.'"  Carlo v. City of Chino,

15   105 F.3d 493, 497 (9th Cir. 1997) (quoting Vitek v. Jones, 445 U.S. 480, 488 (1980)).  However,

16   here petitioner has not cited any case establishing that he has a state created liberty interest in

17   having his jury in a state criminal prosecution instructed on a lesser included offense.[5]   It is

18   correct that the United States Supreme Court has held that the failure to instruct on a lesser

19   included offense in a capital case constitutes constitutional error if there was evidence to support

20   the giving of the instruction.  Beck v. Alabama, 447 U.S. 625, 638 (1980).  The Supreme Court

21   has not decided, however, whether this rationale extends to non-capital cases.  The Ninth Circuit,

22   like several other federal circuits, has declined to find constitutional error arising from the failure

23   to instruct on a lesser included offense in a non-capital case.  See Solis v. Garcia, 219 F.3d 922,

24   929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a

25   state trial court to instruct on lesser included offenses in a non-capital case does not present a

26   federal constitutional question"); Bashor, 730 F.2d at 1240 ("[T]he failure of a state court to

27

28   _____
     [5]  Let alone over his defense counsel's objection.

1   instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question

2   and will not be considered in a federal habeas corpus proceeding."); James v. Reese, 546 F.2d

3   325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a

4   federal constitutional question and will not be considered in a federal habeas corpus proceeding");

5   see also United States v. Rivera-Alonzo, 584 F.3d 829, 834 n.3 (9th Cir. 2009) ("In the context of

6   a habeas corpus review of a state court conviction, we have stated that there is no clearly

7   established federal constitutional right to lesser included instructions in non-capital cases. . . .

8   On direct review, we have not resolved whether there is a Constitutional right to a lesser-included

9   instruction in noncapital cases.")

10          In the absence of a liberty interest, the fact that a state court decision may arguably appear

11  to contravene state law does not make that decision "arbitrary," in violation of the federal due

12  process clause.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442

13  U.S. 1 (1979).  Moreover, to find a constitutional right to a lesser-included offense instruction

14  here would require the application of a new rule of law in the context of a habeas petition,

15  something the court cannot do under the holding in Teague v. Lane, 489 U.S. 28 (1989).  See

16  Solis, 219 F.3d at 929 (habeas relief for failure to instruct on lesser included offense in non-

17  capital case barred by Teague because it would require the application of a new constitutional

18  rule); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995), overruled on other grounds by Tolbert

19  v. Page, 182 F.3d 677 (9th Cir. 1999) (en banc) (same).

20          For these reasons, petitioner is not entitled to federal habeas relief with respect to his

21  claim that his right to due process was violated by the California Court of Appeal's rejection of

22  his instructional error argument on appeal.

23  **IV.  Motion for Default Judgment**

24          On October 14, 2014, petitioner filed a motion entitled "Objection to the Delay in Time

25  Constraints."  (ECF No. 22.)  Therein, petitioner argues that this court should grant his habeas

26  petition because of respondent's failure to file a timely answer to his petition.  The court will

27  construe petitioner's filing as a motion for default judgment.

28  /////

1    A default judgment is unavailable in a habeas action.  See Gordon v. Duran, 895 F.2d 610,

2   612 (9th Cir. 1990).  In any event, respondent was never in default nor was respondent's answer

3   untimely.  A review of the court docket reflects that on August 1, 2014, respondent was ordered

4   to file a response to petitioner's February 21, 2014 amended petition for writ of habeas corpus

5   within sixty days.  (ECF No. 14.)  Respondent filed a timely answer on September 30, 2014, as

6   ordered.  (ECF No. 20.)  Accordingly, petitioner's motion for default judgment will be denied.

7   **V. Conclusion**

8    For all of the reasons explained above, IT IS HEREBY ORDERED that petitioner's

9   motion for default judgment (ECF No. 22) is denied.

10    IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas

11   corpus be denied.

12    These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14   after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17   shall be served and filed within fourteen days after service of the objections.  Failure to file

18   objections within the specified time may waive the right to appeal the District Court's order.

19   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

20   1991).  In his objections petitioner may address whether a certificate of appealability should issue

21   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

22   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

23   enters a final order adverse to the applicant).

24   Dated:  April 9, 2015

25

26

27   DAD:8:
     Haynie1876.hc

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

28

26